**CENTRAL HANOVER BANK & TRUST CO. v. NORTH BUTTE MIN. CO. et al. (FIRST & AMERICAN NAT. BANK OF DULUTH, Intervener).**

No. 617.

District Court, D. Montana.

July 24, 1933.

R. F. Gaines, of Butte, Mont., for plaintiff.

J. A. Poore and C. R. Leonard, both of Butte, Mont., for defendants.

P. E. Geagan, of Butte, Mont., for intervener.

BOURQUIN, District Judge.

In this final hearing in the suit (Central Union Trust Co. of New York v. North Butte Mining Co.) reported in (D. C.) 26 F.(2d) 675, wherein is change in plaintiff's name and an unnecessary intervener, the issues have dwindled to the validity of $8,000 of the bonds and the excess thereof due the pledgor of them to intervener.

The defendant company alleges that without consideration the bonds were appropriated by one John W. Neukom and pledged to intervener.

The evidence discloses that at least from February, 1926, to November, 1927, Neukom was a director, assistant secretary, and state agent of said defendant, his salary and office allowance $1,800 per year. In addition, during 1926 from February to December he presented six bills in the main for special legal services from December, 1925, to December, 1926, in respect to the "Tuolumnee merger," aggregating $7,925. These were paid without corporate action, but attached are vouchers indorsed, "Correct E. R. Grochan, Assistant Secretary," and, "Approved F. R. Kennedy, Treasurer," neither of whom appears to have had authority to that end.

In the minutes of a directors' meeting of December 26, 1926, and attended by Neukom, is entry it was unanimously "resolved that the acts of the executive officers in the sale of $8,000 of the company's" bonds "is in all respects approved, ratified and confirmed."

January 7, 1927, Neukom received said bonds upon another bill dated December 30, 1926, which states it is a "duplicate of statement rendered Oct. 14, 1926. Special services rendered in connection with North Butte-Tuolumnee merger; analysis of merger agreement; report on closing merger; report and opinion re-affecting charter; analysis capital structure on stock issue and exchange treasury stock situation; set up of merger and exchange of stock from legal and accounting standpoints; preparation of data in financing bond sales campaign; miscellaneous con-sultations, conferences, etc., $10000. Payment of above is to cover settlement in full for all services rendered in calendar year 1926. Received in full payment of the above amount," the $8,000 bonds and $2,000 money. This bill, to the extent of the $2,000 money only, has voucher attached indorsed as the others, save by Atwater, president, instead of by the assistant secretary, equally unauthorized.

The only other entries in the books are of later date and ascribe delivery of the bonds to Neukom for special legal services. Thereafter Neukom pledged the bonds to intervener though testifying he theretofore gave them to his wife.

The bill last aforesaid is in large part duplication of the other bills, and otherwise its particular items are within the scope of their general items. And one of the other bills for $1,021 includes October 14, 1926.

One of defendant's by-laws provides that "no director or executive officer of the Company shall be entitled to any salary or compensation for any services performed for the Company unless such salary or compensation shall be fixed by resolution of the Board of Directors or of the stockholders."

Gow testified that he as director of and for Tuolumnee negotiated the merger; that he is president and director of defendant since November, 1927; that Neukom had no part in the merger, did not even know of it until completed, told Gow so, and expressed resentment for that Kennedy "did not let him in on it"; that long prior to the merger Neukom proposed he undertake a sale of Tuolumnee to defendant, which came to nothing; that in 1927 witness heard Neukom tell Jahn, defendant's then president, that he secured the bonds pursuant to the board's resolution, denied by Jahn, Neukom responding "it was a sort of stand-up vote after you went out."

Jahn, president of Tuolumnee until merger and then of defendant, testified he was present at the meeting of the entry of the resolution, and none such was before the board; that he "heard nothing of it. Later, I asked Neukom about it, and he said it was 'passed after you went out.' I did not go out until adjourned;" and that "Neukom had nothing to do with the merger."

In behalf of intervener (and himself) Neukom testified that at the meeting of the entry of the resolution aforesaid, it is his "best recollection" the matter of his "compensation came up and was acted upon"; that he "does not recall" the conversation with Jahn aforesaid; that the bonds were for services in 1920,

1921 in negotiations contemplating sale of Tuolumnee to defendant; that if successful he was to have a stock option, but later he suggested he ought to have different compensation and Atwater proposed $10,000 bonds and cash.

On cross-examination he admitted the negotiations aforesaid were on a commission basis, were dropped, and no bill presented for services until the bill upon which he received the bonds and cash, wherein at Atwater's suggestion he set out was for services in 1926; that he did not keep the minutes and was surprised that the resolution was in form approval of a sale of the bonds for he bought none; that in 1926 one Joseph B. Cotton was general counsel and without corporate action employed witness; that his analysis of the agreement was subsequent to merger, and the item "report and opinion," etc., in said bill is a "mistake"; and that he gave the bonds to his wife but later pledged them to intervener. If Neukom's interest could be promoted by indicated witnesses, none appeared.

The evidence, even intervener's, is clear that the bonds were appropriated by Neukom without corporate authority, action, or consideration, in fraudulent breach of trust. Analysis to demonstrate it would be as idle as to convince that two and two make four. Theretofore, for any service rendered, Neukom had received compensation whether or not valid and earned. And it is apparent that the entry of the resolution was of falsehood in substance and of action, doubtless in surreptitious endeavor to comply with the by-law aforesaid and supply a record against the hour of need.

For any Neukom's service during his official tenure and of it or not, was within the broad terms of the by-law, doubtless intended to check forays on the treasury without knowledge of and sanction by the board, intended to defeat the common strategy of special service by mere managerial authority, one of the devices by which corporations are bled, stockholders robbed, and officers and other insiders enriched.

█ If Cotton employed Neukom, it was without authority to do so at corporate expense. It is of an ancient maxim that general counsel cannot thus delegate his duties of skill and discretion by the corporation delegated to him.

The situation disclosed is more of set-up or hold-up than of stand-up, is of collusion, perhaps to compensate Neukom for Kennedy's failure to "let him in on it," in on the good thing a merger generally is.

██ The bonds fraudulently secured from defendant, the intervener has the burden to establish its status as holder in due course. It suffices to say this it has done in so far as the pledge to it is unredeemed, viz., $4,000 with 6 per cent. interest thereon from December 9, 1930, until paid. And for so much plaintiff is entitled to decree.

Concurrent with payment, intervener will deliver all bonds and coupons for cancellation.